**Beren R. VEST, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 03–CF–1320.**

District of Columbia Court of Appeals.

Argued April 20, 2006.

Decided Aug. 10, 2006.

---

Thomas D. Engle, Indianapolis, IN, with whom Sharon L. Burka, was on the brief, for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Assistant United States Attorney at the time the brief was filed,

Roy W. McLeese III, and Karen L. Melnik, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and REID, Associate Judges, and KING, Senior Judge.

RUIZ, Associate Judge:

Appellant challenges the sufficiency of the circumstantial evidence to support his conviction for unlawful distribution of phencyclidine ("PCP"), in violation of D.C.Code § 48–904.01(a)(1) (2001), and asserts that his convictions of mayhem while armed (D.C.Code §§ 22–406, –4502 (2001)), aggravated assault while armed (D.C.Code §§ 22–404.01 –4502 (2001)), and assault with a deadly weapon (D.C.Code § 22–402 (2001)) merge. We agree, and the government has conceded, that his convictions on these three counts merge, but we conclude that the evidence was sufficient to support appellant's conviction for distribution of PCP.[1]

## I.

To prove the unlawful distribution of a controlled substance, the prosecution must demonstrate beyond a reasonable doubt that the substance distributed was in fact such an illegal drug. *See Bernard v. United States,* 575 A.2d 1191, 1193–94 (D.C.1990). " '[A]s with any other component of the crime, the existence of and dealing with narcotics may be proved by circumstantial evidence . . . . ' " *Id.* at 1193 (quoting *United States v. Agueci,* 310 F.2d 817, 828 (2d Cir.1962)). This rule is particularly important in prosecutions involving illegal narcotics, since the drugs "will often be unavailable for scientific analysis because their nature is to be con-

sumed." *Id.* at 1194 (quoting *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir.1988)). This is such a case, where the government did not directly prove the existence of the drug by presenting physical evidence and a chemical analysis of the substance seized.

The government presented evidence during trial establishing that on March 26, 2002, Camishia Mason and Sharnette Littlejohn spent the early evening at Littlejohn's home sharing a "dipper," which was described to the jury by Mason, Littlejohn, and a testifying police officer as a cigarette dipped in liquid PCP and then smoked. Littlejohn purchased the dipper around the corner from her house for twenty dollars. According to Littlejohn, the dipper made her "a little high," and Mason testified that it made her feel "light-headed, numb." Once the dipper's effects wore off, the two women decided they would like another one. They called one of Littlejohn's friends, identified only as "Juan," to come pick them up. He did, and brought a friend along to join the search for more dippers. The foursome traveled to a Motel 6 in Maryland, where Juan attempted to page a dealer he thought would deliver dippers to them at the hotel. After enjoying a couple of drinks (Hennessy and cokes) however, the impatient group decided they did not want to await the delivery. The group headed back to Littlejohn's house and tried to locate the person who had sold Littlejohn the first dipper she and Mason had shared earlier in the evening, but he was nowhere to be found.

Littlejohn then directed the group to Yuma Street, S.E., because she had purchased dippers there on previous occasions. Once they arrived at Yuma Street,

---

1. Appellant was also convicted of possession of a firearm during a crime of violence or dangerous offense, in violation of D.C.Code § 22–4504(b) (2001), and carrying a pistol without a license, in violation of D.C.Code § 22–4504(a) (2001). Appellant does not raise any challenges to those convictions.

Littlejohn and Mason exited the car and began walking up a grassy hill. They passed "a lot of people" they did not know who asked them what they wanted, but Littlejohn told them she did not want to buy from them. They continued up the hill until they found appellant, whom Littlejohn knew. Littlejohn told appellant that they wanted "two dippers." Appellant then produced two cigarettes and dipped them in a bottle that he retrieved from inside his jacket. The bottle contained a liquid variously described by Littlejohn as "water" and "stuff." Appellant gave the dipped cigarettes to Littlejohn, who paid forty dollars for them.

While the transaction was taking place, appellant asked Mason if he knew her "from somewhere." Although both Mason and Littlejohn assured appellant that he did not know Mason, appellant became convinced that she was the same person who had gotten him thrown out of a nightclub the previous week. He instructed his cohort to get his gun, and, as the situation unraveled, appellant ended up shooting at Mason four times, striking her twice, in each of her legs. In the meantime, Littlejohn went back to the car, where Juan and his friend were waiting. The threesome drove away, leaving Mason on the street as appellant shot at her.

Littlejohn, Juan, and Juan's friend returned to the Maryland Motel 6, where Littlejohn smoked the cigarettes she had bought from appellant. She testified that, at the time, she had been smoking PCP regularly for about three years, "not every day but most of the time," and that compared to the other times she had smoked PCP, these cigarettes "got [her] high" and made her feel "a little woozy." Appellant continuously referred to the cigarettes she bought from appellant as "dippers," and never suggested she believed they were anything other than what she had set out

to purchase—cigarettes dipped in liquid PCP.

## II.

■ Appellant asks us to conclude that the government did not present evidence sufficient to establish, beyond a reasonable doubt, that the substance appellant sold to Littlejohn was PCP, as opposed to some other drug. Although we believe the case is a close one, we conclude that the evidence was sufficient to sustain the jury's verdict.

■ In determining whether the evidence was sufficient to support a conviction, this court applies the same standard used by the trial court in deciding a motion for judgment of acquittal. *See Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987). Accordingly, we "review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Id.* (citations omitted). *See also Earle v. United States*, 612 A.2d 1258, 1265 (D.C. 1992). "[I]t is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Nixon v. United States*, 730 A.2d 145, 148 (D.C.1999) (quoting *Gayden v. United States*, 584 A.2d 578, 580 (D.C.1990) (internal citations omitted)). However, "evidence is insufficient if, in order to convict, the jury is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Curry*, 520 A.2d at 263 (quoting *Shelton v. United States*, 505 A.2d 767, 770–71 (D.C. 1986)).

The jury in this case would not have had to engage in impermissible specula-

tion in order to find that appellant sold Littlejohn PCP. To the contrary, based on the evidence presented, the jury would have had to speculate in order to conclude that appellant sold Littlejohn anything other than PCP. Littlejohn was a habitual PCP user, well familiar with its inhalation in "dippers," its sources of distribution, its price, and its physiological effects when smoked. The cigarettes she bought from appellant conformed to all of these expectations: they were cigarettes dipped in a liquid, sold for the same price as the dipper she had bought earlier that day, and they made her "high" and "woozy" when she smoked them—not a dissimilar description from that of the effect of the dipper smoked earlier in the day, *i.e.*, "a little high." Additionally, Littlejohn went to Yuma Street because she had bought dippers there before, and appellant was apparently someone she knew and felt comfortable with for this intended transaction—unlike the other people who first approached her and offered to sell to her. In short, Littlejohn knew what dippers are, knew where to find them, how and from whom to buy them, how to smoke them, and how they would make her feel once she did. Littlejohn gave no indication whatsoever that the substance sold to her by appellant was anything other than that which she sought and with which she was intimately familiar—PCP.

The jury had sufficient evidence to reach the same conclusion, notwithstanding the lack of physical evidence of the PCP, or the lack of expert testimony on its use or effects. *See, e.g., Bernard,* 575 A.2d at 1193 (noting that "the existence of ... narcotics may be proved by circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished ground for inferring that the material in question was narcotics") (quoting *United States v. Agueci,* 310

F.2d 817, 828 (2nd Cir.1962)); *United States v. Gaskin,* 364 F.3d 438, 460 (2d Cir.2004) (noting that "neither actual drug exhibits nor reports of chemical analysis are required to support a conviction for possession of a controlled substance"). *United States v. Harrell,* 737 F.2d 971, 978 (11th Cir.1984) (stating that circumstantial evidence establishing the existence or identity of a drug can include "lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on the scene remarks by a conspirator identifying the substance as a drug; and behavior characteristic of sales and use such as testing, weighing, cutting and peculiar ingestion"); *United States v. Dolan,* 544 F.2d 1219, 1221–22 (4th Cir. 1976) (setting out similar set of factors and collecting cases employing them); *United States v. Baggett,* 954 F.2d 674, 677 (11th Cir.1992) (same); *United States v. Eakes,* 783 F.2d 499, 505 (5th Cir.1986) (same).

Appellant points out that there was no description of how the liquid PCP looked or smelled, and that its identity was not sufficiently established. He argues that appellant's "high" could have, therefore, been due to some other intoxicating substance, perhaps one that carries a lesser criminal penalty when distributed than does distribution of PCP. Although this was a weakness in the government's case that could have created a reasonable doubt in the jurors' minds, we do not think the jury was compelled to have such doubt as a matter of law. Given the aggregate of other circumstantial evidence indicating that appellant sold PCP, the lack of testimony about the specific physical characteristics of the liquid in which the cigarettes were dipped does not undermine the jury's verdict. Appellant's argument might be more persuasive if there had been some evidence that the substance sold to Littlejohn was not, in fact, what it was purport-

ed to be. Here, there is not even a hint that Littlejohn was sold anything other than the PCP that she asked and paid for. She appeared to have no doubt that she bought and smoked PCP. Moreover, appellant never argued to the jury that the substance was or could have been something other than PCP; in fact, he repeatedly referred to the fact that Littlejohn bought and used PCP that night and argued that its intoxicating effects undermined her identification of appellant as the one who sold the dippers to her and shot Mason. Additionally, the jury was specifically instructed that it must "decide whether the material was PCP" and that they could "consider all the evidence ... including exhibits, expert and nonexpert testimony." With the evidence before it, the jury could reasonably infer that the dippers appellant sold contained PCP, unless it were to completely discredit Littlejohn's testimony, which it obviously did not. This credibility determination will not be disturbed on appeal. *See Curry,* 520 A.2d at 263.

■ We also reject appellant's claim that the evidence was insufficient to satisfy the government's burden to prove that appellant sold a "measurable amount" of PCP. The prosecution could meet its burden of proof through direct or circumstantial evidence that the substance in question contained a measurable amount of a controlled substance. *See Thomas v. United States,* 650 A.2d 183, 197 (D.C.1994) (en banc). We have recognized that circumstantial evidence that the substance was used as a controlled substance suffices to establish that it was "measurable"; "where the government has established usability it will also have established measurability." *Id.* at 197 n. 46. Littlejohn testified that she used the dippers sold to her by appellant, and got high by doing so. From this,

the jury reasonably could infer that there was a measurable amount of PCP.

Therefore, we conclude that there was sufficient circumstantial evidence from which the jury reasonably could find that appellant sold Littlejohn a measurable amount of PCP, and we affirm his conviction on that count. We remand, however, because appellant's convictions for mayhem while armed, aggravated assault while armed, and assault with a deadly weapon merge. *See McCoy v. United States,* 890 A.2d 204, 216 (D.C.2006); *Nixon,* 730 A.2d at 155. The trial court is directed to vacate two of these three convictions and to resentence appellant accordingly.

*So ordered.*