Andre OTTS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 04–CF–1139, 06–CO–1040.

District of Columbia Court of Appeals.

Argued May 10, 2007.
Decided Sept. 13, 2007.
Amended April 24, 2008.[1]

1. This opinion was originally issued on September 13, 2007. *See Otts v. United States,* 936 A.2d 782 (D.C.2007). Upon consideration of appellant's post-decision petition, this opinion is being reissued in amended form.

Lee Richard Goebes, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Ann K.H. Simon, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the initial brief was filed, Jeffrey A. Taylor, United States Attorney at the time the supplemental brief was filed, and Roy W. McLeese III, Precious Murchison, and Carolyn K. Kolben, Assistant United States Attorneys, were on the brief, for appellee.

BEFORE: WASHINGTON, Chief Judge; FARRELL, RUIZ, REID,* GLICKMAN, KRAMER, FISHER,** BLACKBURNE–RIGSBY,* and THOMPSON, Associate Judges; KING, Senior Judge* (Order).

Before REID and BLACKBURNE–RIGSBY, Associate Judges, and KING, Senior Judge (Opinion).

PER CURIAM.

ORDER

On consideration of appellant's petition for rehearing or rehearing en banc, it is

ORDERED by the merits division* that the petition for rehearing is granted as set forth in the amended opinion filed April 23, 2008, and that this court's opinion filed on September 13, 2007, is hereby vacated. It is

FURTHER ORDERED that the petition for rehearing en banc is denied as moot, without prejudice to the filing of a petition for rehearing en banc directed to the amended opinion issued on April 23, 2008.

BLACKBURNE–RIGSBY, Associate Judge:

Appellant, Andre Otts, was charged with distributing a controlled substance (heroin) and unlawful possession of a controlled substance (heroin), both in violation of D.C.Code § 48–904.01(a)(1) (2001).

In this consolidated appeal, appellant presents four arguments for reversal, of which the first two, are the primary focus of this opinion. Appellant first contends that the trial court plainly erred in admitting two DEA–7 chemist reports at trial when the chemist did not testify at trial. Second, appellant argues that the trial

court erred in denying his D.C.Code § 23–110 (2001) motion for relief, in which he alleged that his trial counsel was ineffective for failing to raise an objection under the Confrontation Clause of the Sixth Amendment to the introduction of chemist reports, and for failing to move the trial court to reopen its pretrial ruling on the admissibility of appellant's statement made while in custody. Third, appellant contends that the trial court committed plain error in failing to reverse *sua sponte* its *sua sponte* pretrial ruling denying suppression of a statement appellant made while in police custody, when evidence introduced at trial revealed that the statement was made in response to interrogation. Fourth, appellant contends that the trial court erred in denying his Motion for Judgment of Acquittal as to the unlawful possession charge because the evidence was insufficient to establish that appellant possessed a "measurable" amount of heroin. We reject all four of appellant's arguments and affirm the decision of the trial court.

I. Factual Background

On December 11, 2003, Metropolitan Police Department ("MPD") officers were conducting a narcotics surveillance operation in the 300 block of L Street, S.E., Washington, D.C. Observation post officers observed appellant standing in the 300 block of L Street, S.E., and a teal-colored Ford vehicle drive onto the block. A male passenger, later identified as appellant's co-defendant, Robert Drummond, exited the vehicle, approached appellant, and the two men engaged in a conversation. Then, the two men walked a short distance and observation post officers saw appellant give Mr. Drummond a small object in exchange for U.S. currency. Mr. Drummond then left the area.

** Associate Judge Fisher has recused himself from these cases.

■ Upon witnessing this transaction, observation post officers gave a lookout description of the teal-colored vehicle, and arrest team officers detained Mr. Drummond and recovered three green Ziploc bags of a substance that later field tested positive for heroin, and one blue-colored Ziploc bag of a substance that later field tested positive for cocaine base. Arrest team officers then stopped appellant at the corner of Third and L Streets, S.E. MPD Officers Michael Jewell, Donald Smalls, and William James, each testified that they were able to see appellant place an object in his mouth after he was stopped by the arresting officers. Specifically, Officer Smalls testified that when appellant noticed him and the other arresting officers, he "motion[ed] to his mouth with his right hand," prompting the officers to jump out of their vehicle and ask appellant what he had just placed in his mouth, to which appellant did not say anything. The transcript indicates that Officer Smalls testified on direct examination that appellant responded to the arresting officers' inquiry of "what do you have in your mouth" by repeatedly saying "he didn't have anything." However, on cross examination, Officer Smalls testified that appellant said nothing in response to this inquiry, but began to move his [A]dam's apple as if trying to swallow, and further testified: "He didn't say anything until after he spit it out. When he spit it out, Mr. Otts said there's nothing in there." Viewing the evidence in a light most favorable to the government, as we must, we are satisfied

that appellant made the at-issue statement after expelling the green bag from his mouth. *See, e.g., United States v. Turner,* 761 A.2d 845, 850 (D.C.2000); *Peay v. United States,* 597 A.2d 1318, 1320 (D.C. 1991) (en banc).

Officer Smalls, along with arrest team Officer James, approached appellant and brought him over to their police cruiser. At this time, Officer Smalls could see appellant's "Adam's apple trying to swallow something," and ordered appellant to "spit it out." Another arrest team officer then placed his hand around appellant's collar in an effort to force him to expel the object from his mouth. Appellant finally spit the object out, and remarked "there's nothing in there." The officers determined that it was a "[green] plastic bag with a white residue in it that was chewed up."

## II. Analysis

### 1. *Crawford* Challenge to the Admissibility of the Chemist Reports

■ Appellant argues, for the first time on appeal, that the admission of the two DEA–7 chemist reports at trial violated his Sixth Amendment confrontation rights because the chemist was not called to testify.[2] Specifically, appellant argues that the chemist reports constituted "testimonial hearsay" under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford,* the Supreme Court announced that "[t]estimonial statements of witnesses absent from trial [are] admitted only where the declarant is

**2.** To be clear, two DEA–7 chemist reports were admitted into evidence. The first chemist report, introduced during the testimony of Officer Smalls, consisted of a "Certified Report of Controlled Substance Analysis," which reported the chemist's findings regarding the contents of the single green Ziploc bag recovered from appellant, as well as a "Report of Drug Property Collected, Purchased or Seized." In the Certified Report, the chemist

listed the net weight of the Ziploc as "residue" and reported its contents as heroin and quinine. The second chemist report introduced during the trial testimony of Officer Croson, was identical to the first and analyzed the contents of the four Ziploc bags recovered from Mr. Drummond, the contents of which were quantifiable and contained a reserve weight.

unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59, 124 S.Ct. 1354. The government relies on the statutory authority for the admission of these reports pursuant to D.C.Code § 48–905.06 (2001) (chemist report is admissible as business record), as well as our decision in *Howard v. United States,* 473 A.2d 835, 840 (D.C. 1984),[3] in which we held that DEA reports were properly admitted at trial as business records, and that the Confrontation Clause did not require barring the admission of these reports. Appellant concedes that his trial counsel failed to raise a Confrontation Clause objection at trial to the government's introduction of the chemist reports. Therefore, we review appellant's current constitutional claims under the rigors of plain error, which require appellant to show that the trial court's allowance of the chemist reports into evidence was "(1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Marquez v. United States,* 903 A.2d 815, 817 (D.C.2006) (citing *United States v.*

*Olano,* 507 U.S. 725, 732–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).[4] Although appellant satisfies the first and third prongs of *Olano,* we conclude that appellant is unable to meet the remaining predicates.

■ We conclude that appellant satisfies the first prong of *Olano* based on our prior decision in *Thomas,* where we found error. *See Thomas, supra,* 914 A.2d at 20–21. Further, Mr. Otts has satisfied his burden under the third prong of *Olano* of proving that the error in this case affected his "substantial rights" because there was a reasonable probability that the Confrontation Clause violation had a prejudicial effect on the outcome of his trial. *Id.* at 21 (citing *United States v. Dominguez Benitez,* 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)). Here, as in *Thomas,* we so hold because "the DEA chemist's report was the main, if indeed not the only, proof offered by the prosecution" that the substance Mr. Otts was charged with distributing and possessing was a controlled one. *Id.* at 21–22.[5]

3. In *Howard,* we rejected the appellant's Sixth Amendment claim because we found the chemist's reports were "sufficiently trustworthy to satisfy the purpose of the Confrontation Clause." 473 A.2d at 839. That decision was principally based upon *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which instructed that the Confrontation Clause allows the court to admit an unavailable witness's out-of-court statement against a defendant so long as the statement bears "adequate indicia of reliability." However, the Supreme Court overruled *Roberts* in *Crawford.* Thus, in *Thomas v. United States,* 914 A.2d 1, 5 (D.C.2006), we recognized that *Crawford* superseded *Howard.*

4. We note that our review of appellant's constitutional claims will be conducted based upon our decision in *Thomas,* as opposed to *Howard,* which was the prevailing law regarding the admission of DEA–7 chemist reports at the time of appellant's trial. We do so

based on our adoption of the "firm rule of retroactivity" of judicial decisions articulated by the Supreme Court in both criminal and civil cases. *See, e.g., Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Davis v. Moore,* 772 A.2d 204, 230 (D.C.2001) ("We adopt the firm rule of retroactivity that the Court articulated in *Griffith* and *Harper.*") (internal quotation marks and citations omitted); *Marquez, supra,* 903 A.2d at 817.

5. The original version of this opinion, *Otts v. United States,* 936 A.2d 782 (D.C.2007), analyzed the other strongly corroborative circumstantial evidence of the substance's identity under the third *Olano* prong (substantial rights) as compared to *Thomas, supra,* 914 A.2d at 21–22, which analyzed that evidence under the fourth *Olano* prong (affecting fairness, integrity and public reputation of the

■ With regards to the second prong of *Olano* that requires that the error is "plain" at the time of trial, unlike the defendant-appellant in *Thomas*, Mr. Otts's trial occurred after *Crawford* but before our decision in *Thomas*. The special plain error rule that required the error to be "plain" at the time of appellate consideration in *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), does not apply to trials conducted after *Crawford* because "an objection [raised at trial] would not necessarily have been futile" because the "continuing viability" of *Howard* was an open question. *See Thomas, supra*, 914 A.2d at 20, 21 n. 26.

■ Even if Mr. Otts had been able to satisfy the first three prongs of *Olano*, he fails under the fourth and final prong: whether the unobjected-to error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' before we may exercise our discretion to correct the error. *Johnson, supra*, 520 U.S. at 469–70, 117 S.Ct. 1544 (citations omitted). In *Thomas, supra*, 914 A.2d at 22, we held that the discretion to correct the error must be evaluated on a case-by-case basis due to each case's unique factual circumstances. In this case, as in *Thomas*, the evidence in the record demonstrates that the error did not seriously affect the fairness, integrity, and public reputation of the judicial proceeding.

In terms of the fairness of the proceeding, Mr. Otts was provided copies of the DEA chemist's reports, including the chemist's worksheets, prior to trial, and he was notified that the government intended to offer those reports into evidence at trial. Mr. Otts has never challenged the chemical analysis contained in either of the two

DEA–7 reports, which purported to prove that the substances in the buyer's Ziploc bag and Mr. Otts's Ziploc bag were heroin. He has not indicated that he had any questions for the chemist who prepared the reports, what information he hoped to elicit upon cross-examination of the chemist and how this information would have aided his defense. Moreover, Mr. Otts had a "fair opportunity to investigate and challenge the chemist's report[s], and he could have subpoenaed and cross-examined the chemist if he doubted [the chemist's] findings, qualifications, or methodology," *id.* at 23, but chose not to do so. Mr. Otts never disputed the accuracy of the chemist's reports; indeed, his defense theory was that he did not sell drugs to Mr. Drummond and that the DEA–7 analysis on the substance recovered from Mr. Otts did not prove it contained a measurable amount of heroin. As noted earlier, Mr. Otts did not raise a valid objection to the admission of these reports into evidence. As we held in *Thomas*, "[h]aving elected not to contest the identity of the [heroin] mixture at his trial, appellant cannot claim that fairness requires that he nonetheless be given a chance to contest it now." *Id.* at 23.

■ As to the integrity of the proceeding, we similarly note that "there is no reason whatsoever to believe that the chemist's report was unreliable" and that other evidence adduced at trial "strongly corroborated the chemist's identification" of the substance. *Id.* at 23 (noting that circumstances of sale of "white rocky substance" contained in ziplock bag and positive field test strongly corroborated chemist's report that substance was cocaine). Further negating the possibility that the

proceedings). This amended opinion analyzes this other strongly corroborative circumstantial evidence of Mr. Otts's possession and distribution of a controlled substance un-

der the fourth *Olano* prong, eliminating any inconsistency with this court's decision in *Thomas*.

chemist report might have been unreliable and might have affected the integrity of the proceeding was the testimony at trial of several officers who observed appellant in an open air drug market and, moments before his arrest, hand Mr. Drummond a small object in exchange for U.S. currency. After arrest team officers stopped appellant in response to a lookout given by observation post officers, Officers Jewell, Smalls, and James, each testified that they could see appellant place an object in his mouth and begin to chew as they approached. Officer Smalls could see appellant's "Adam's apple trying to swallow something," and Officer James could see that appellant was "chewing" something in his mouth. Once appellant finally expelled this object from his mouth, Officer Smalls could see that it contained what he recognized from his experience was heroin residue. The officers' testimony, in addition to appellant's statement "there's nothing in there" after he spit out the bag, was sufficient for a jury to reasonably find that appellant possessed a measurable amount of heroin with an intent to distribute it. *See, e.g., Vest v. United States*, 905 A.2d 263, 268 (D.C.2006) ("The prosecution [can] meet its burden of proof through direct or circumstantial evidence that the substance in question contained a measurable amount of a controlled substance.").

Finally, in light of our determinations about the fairness and integrity of the proceeding, we note the same difficulty the *Thomas* court did in "see[ing] how the use of the DEA chemist's report at appellant's trial otherwise could be thought to have impugned the public reputation of the judicial proceeding." *Id.* Although the United States Supreme Court decided *Crawford* three weeks before Mr. Otts's trial commenced and *Crawford* "dramatically transformed Confrontation Clause jurisprudence" regarding testimonial evidence, that transformation was neither instanta-

neous nor clearly applicable to the admissibility of DEA reports. *See id.* at 8. The chemist's report was admitted in accordance with the understanding of the settled law at the time of trial. *See id.* at 23.

We conclude that the fairness, integrity or public reputation of Mr. Otts's trial was not undermined by the introduction of the chemist's report.

## 2. Ineffective Assistance of Counsel Claims

Subsequent to sentencing, appellant filed a motion for relief from his conviction pursuant to D.C.Code § 23–110, contending that his trial counsel had rendered ineffective assistance of counsel by: (1) failing to raise an objection under the Confrontation Clause to the introduction of the DEA–7 chemist reports when the declarant chemist did not testify at trial; and (2) failing to move the trial court to revisit its pretrial ruling regarding the admissibility of his statement "there's nothing in there" under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when the trial testimony of Officers Smalls and James negated the factual predicate upon which the trial court had relied in concluding that the statement was admissible. We are not persuaded by these claims.

 For purposes of appellate review, the trial court's determination of whether counsel was ineffective presents a mixed question of both law and fact. *See Cosio v. United States*, 927 A.2d 1106 (D.C.2007); *Frederick v. United States*, 741 A.2d 427, 436 (D.C.1999). Under D.C.Code § 17–305 (2001), we must accept the trial court's factual findings unless they lack evidentiary support in the record, *see also Lopez v. United States*, 863 A.2d 852, 861 (D.C. 2004), but we review the trial court's legal determinations *de novo*. *See Byrd v. United States*, 614 A.2d 25, 30 (D.C.1992).

■ In the present case, the judge did not make findings of fact and conclusions of law in ruling on appellant's § 23–110 motion. Instead, in a written order, dated August 11, 2006, the trial court denied appellant's motion for relief "[f]or the reasons stated in the government's Opposition." Although "[w]e [remain] mindful of the exceptional caseload under which the trial judges labor, we take this occasion only to remind them of the difficulty which verbatim adoption of proposed findings creates for our statutory obligation to defer to factual findings of the trial court." *Frederick, supra,* 741 A.2d at 436 (citing *Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C. 1990)). Although the absence of factual findings does not automatically constitute error by the trial court, it does, however, require "more careful review by the appellate court." *Frederick, supra,* 741 A.2d at 436; *accord Chase v. D.C. Alcoholic Beverage Control Bd.,* 669 A.2d 1264, 1266 n. 2 (D.C.1995).

To prevail on his ineffective assistance of counsel claims, appellant must demonstrate that his counsel's performance was constitutionally deficient, and that the deficient performance prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally deficient performance, appellant must show that counsel's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. To establish prejudice, appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ Appellant is unable to show deficient performance or prejudice with regard to his trial counsel's failure to raise an objection under the Confrontation Clause to the introduction of the chemist reports when the declarant chemist did not testify at trial. In reviewing ineffective assistance of counsel claims, we must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct." Strickland, supra,* 466 U.S. at 690, 104 S.Ct. 2052 (emphasis added); *see also Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.") (citation omitted). The facts of the case at bar are particularly instructive of this point. The Supreme Court decided *Crawford* three weeks before appellant's trial commenced. While the *Crawford* decision "dramatically transformed Confrontation Clause jurisprudence" regarding testimonial evidence, *see Thomas, supra,* 914 A.2d at 8 (decided two years after *Crawford*), the transformation was not instantaneous.

*Crawford* concerned the testimonial nature and the admission of a recorded oral statement that petitioner's wife made during police interrogation in an assault and attempted murder case. *See Crawford, supra,* 541 U.S. at 36, 124 S.Ct. 1354. *Crawford* did not directly address whether officially produced written reports, such as the DEA drug analysis reports at issue here, were testimonial in nature. *See id.* at 55–56, 124 S.Ct. 1354. In the aftermath of the *Crawford* decision, until 2006, the prevailing case in this jurisdiction regarding the admission of chemist reports was our decision in *Howard,* in which we held that these reports were properly admitted at trial as business records, and that the Confrontation Clause did not require barring the admission of these reports. *See Howard, supra,* 473 A.2d at 840. Here,

defense counsel had no factual basis at trial on which to challenge the chemist's conclusions and reasonably could have concluded that the appearance of the chemist may have hurt, rather than helped, the defense. While appellant's trial counsel could have attempted to construe DEA–7 chemist reports as testimonial and therefore coming within the ambit of *Crawford,* we cannot say that trial counsel's failure to anticipate our decision in *Thomas,* which came two years after appellant's 2004 jury trial, fell below "prevailing professional norms," or was enough to "overcome the presumption that counsel rendered reasonable professional assistance." *Kimmelman, supra,* 477 U.S. at 386, 106 S.Ct. 2574 (citing *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. 2052); *accord State v. Gross,* 134 Md.App. 528, 760 A.2d 725, 757 (Spec.App.2000) (holding that "the failure to anticipate a possible change in the local law of evidence or to push for such a change is not an instance of counsel's representation [falling] below an objective standard of reasonableness.") (citation omitted).

■ However, assuming *arguendo,* that appellant could prove that his trial counsel's performance was deficient, we are of the opinion that he would still be unable to show prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment . . . if the error had no effect on the judgment." *Strickland, supra,* 466 U.S. at 691, 104 S.Ct. 2052. Had the *Crawford* objection been raised, the government still could have called the chemist to testify based on the reports the chemist prepared. Therefore, appellant would be unable to prove that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693, 104 S.Ct. 2052. As such, we conclude that the trial court did not err in denying appellant's § 23–110 motion based on this contention.

■ Appellant is similarly unable to show deficient performance based on his contention that his trial counsel was ineffective by failing to move the trial court to revisit its pretrial ruling regarding the admissibility of his statement "there's nothing in there" under *Miranda.* Although appellant's trial counsel never moved pretrial to suppress appellant's statement, the trial court *sua sponte* ruled that there was no basis for suppressing the statement. The trial court reasoned that even though appellant was in custody at the time he made the statement, a *Miranda* violation is triggered "only when there is custodial interrogation, and th[e] statement [here] was not made in response to interrogation." Therefore, appellant's statement was admissible at trial. Appellant now argues that his trial counsel's actions in failing to revisit the trial court's *sua sponte* pre-trial ruling mid-way through trial fell below professional norms because, according to appellant, subsequent trial testimony showed that this statement was a product of "custodial interrogation" for purposes of *Miranda*—a fact that the trial court did not have at its disposal during the pre-trial hearing. We disagree.

In the government's Opposition to Defendant's Motion for Relief, upon which the trial court relied, the government argued that the subsequent trial testimony of Officers Smalls and James, in which they testified that appellant was "asked" what was in his mouth, to which appellant "kept saying he didn't have anything," did not undermine the factual predicate for the pre-trial ruling. Specifically, the government argued that appellant's statement, "there's nothing in there," was more likely a spontaneous boast rather than an answer to a question posed by arresting officers.

*See, e.g., Beaner v. United States,* 845 A.2d 525, 535 n. 8 (D.C.2004).

Viewing the evidence in the light most favorable to the government, the sequence of events reveals that: (1) when appellant first noticed the officers, he "motion[ed] to his mouth with his right hand" and began to chew; (2) the officers jumped out of their police vehicle and asked appellant what he had just placed in his mouth and appellant did not say anything; (3) the officers approached appellant and brought him over to their police cruiser, at which time, Officer Smalls could see appellant's "Adam's apple trying to swallow something"; (4) the officers ordered appellant to "spit it out"; (5) the officers used force to try to expel the object from appellant's mouth; (6) appellant finally expelled one green Ziploc bag; and (7) appellant then stated "there's nothing in it" after the bag had been retrieved by Officer Smalls. Deferring to these factual findings, as we must, it is unlikely that appellant said "there's nothing in there" in response to the officer's questions of "what is in your mouth." The government argues that Officer Smalls testified that an estimated two minutes had elapsed between the time appellant placed the object in his mouth and the time he was forced to spit it out, and thereafter stated "there's nothing in there." Thus, it is reasonable to assume that this statement was no more than a spontaneous boast rather than an answer to a question posed before the struggle to retrieve the bag, and therefore *Miranda* was not invoked. *See, e.g., Beaner, supra,* 845 A.2d at 534 n. 8 (appellant's argument of error would fail "since there [was] no evidence in the record that [his] statement was anything other than spontaneous or that it was made in response to any custodial interrogation."); *Jones v. United States,* 779 A.2d 277, 284 (D.C.2001) (en banc). Under these circumstances, appellant's trial counsel cannot be faulted for failing to make an attempt to re-open the motion to suppress because such an attempt would have likely failed.

■■■ Moreover, appellant's trial counsel, in an affidavit submitted with the government's opposition, stated that during his cross-examination of Officer Smalls, who had earlier testified on direct that he asked appellant "what do you have in your mouth," and appellant "kept saying he didn't have anything," the officer admitted that appellant did not say anything until *after* he spit out what he had in his mouth. After this testimony, appellant's trial counsel stated that it did not occur to him to move to reopen the suppression hearing because he "did not believe the statement ... was something that [he] needed to withhold from the jury, especially in light of the fact that the Court had ruled that the item seized from Mr. Otts was admissible." Based on these facts, and trial counsel's representations, we adhere to the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ...," *Strickland, supra,* 466 U.S. at·689, 104 S.Ct. 2052, and that the challenged conduct was sound strategy. *Cf. Kimmelman, supra,* 477 U.S at 385, 106 S.Ct. 2574 (concluding that the failure of appellant's attorney to file a timely suppression motion was "not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence."). Having found no deficiency in counsel's performance, we need not decide whether appellant's defense was prejudiced by his trial counsel's actions. *See Spencer v. United States,* 748 A.2d 940, 946–47 (D.C. 2000) ("A court need not address both components of the [*Strickland*] inquiry if appellant makes an insufficient showing on one of the components.") (citing *Strick-*

land, supra, 466 U.S. at 697, 104 S.Ct. 2052).

### 3. *The Suppression Claim*

Relatedly, appellant contends, for the first time on appeal, that the trial court committed plain error in failing to *sua sponte* reopen the suppression hearing of his statement "there's nothing in there" because the subsequent trial testimony of Officer Smalls revealed that he and Officer James had in fact "asked [appellant] what was in his mouth," to which appellant "kept saying he didn't have anything." For the same reasons above, we disagree.

 As noted, the trial court *sua sponte* determined that there was no basis for suppressing appellant's statement under *Miranda* because the statement was not made in response to interrogation. Ordinarily, a pretrial ruling is the law of the case and cannot be revisited at trial, *Scales v. United States,* 687 A.2d 927, 937 (D.C.1996), however, when new grounds for suppression surface at trial, "the defendant may seek to reopen the matter." *Id.* However, we have held that a defendant's failure to revisit this issue at trial may preclude appellate relief, even if his claims have merit. *See, e.g., id.* at 937; *Allen v. United States,* 383 A.2d 363 (D.C.1978) (issue considered waived because appellant's counsel conceded that he did not move for reconsideration of a suppression motion at trial).

 Guided by our previous decisions, our review in this case is not mandated because it is uncontested that appellant's trial counsel did not revisit the suppression issue at trial. Further, even if we chose to consider the merits of appellant's claims, we would do so under plain error, a burden that appellant would be unable to meet. *See Olano, supra,* 507 U.S. at 732–35, 113 S.Ct. 1770. Thus, we conclude that the trial court did not err in failing to *sua*

*sponte* reopen the suppression issue midway through trial and suppress appellant's statement.

### 4. *The Sufficiency Claim*

 Lastly, appellant contends that the evidence adduced at trial was insufficient to establish that the green-colored bag he expelled from his mouth contained a "measurable" amount of heroin. We review claims of insufficiency of the evidence *de novo,* applying the same standard as the trial court in ruling on a motion for judgment of acquittal. *See Price v. United States,* 746 A.2d 896, 899 (D.C.2000). To preserve the role of the jury, we must "review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact...." *Id.* In order to sustain a conviction for possession of heroin with intent to distribute, the government must prove that the single bag recovered from appellant contained a "measurable" amount of the controlled substance. *See Thomas v. United States,* 650 A.2d 183, 197 (D.C.1994) (en banc) (changing the standard of proof in PWID cases from "usable" to "measurable.").

In the case at bar, the government relied on three pieces of evidence to prove the "measurability" of the cocaine residue present in the bag expelled from appellant's mouth: (1) there was a reasonable assumption that a person under these circumstances would not have a Ziploc bag that did not contain a quantifiable amount of a controlled substance; (2) the evidence showed that the bags recovered from the buyer, Mr. Drummond, contained a quantifiable amount of heroin; and (3) appellant's statement that "there's nothing in there." The DEA–7 chemist report was not the totality of proof on the issue of measurability. We note that the chemist

report does state that the Ziploc bag contained heroin and quinine, but that it was apparently such a minimal amount of the substance that it could not be quantified or measured. However, the fact that the Ziploc bags that appellant sold to Mr. Drummond (a charge appellant does not challenge) were quantifiable, and that appellant would not have an additional Ziploc bag with contents that were not measurable, coupled with appellant's statement "there's nothing in there," could lead a juror to reasonably conclude that immediately before appellant placed the bag into his mouth and began to chew and made a swallowing motion, there existed a measurable amount of heroin. *See, e.g., Vest, supra,* 905 A.2d at 268 (concluding that circumstantial evidence is sufficient to prove the existence of a measurable amount of a controlled substance). Therefore, we conclude that the trial court did not commit error in denying appellant's motion for judgment of acquittal.

*Affirmed.*