*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 15-CM-1176 and 16-CO-568

CLINTON TURNER, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 08/10/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court
of the District of Columbia
(CMD-8679-13)

(Hon. Robert E. Morin, Trial Judge)

(Submitted June 22, 2017                          Decided August 10, 2017)

*Nigel A. Barrella* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Barry Wiegand*, *Angela Buckner*, and *Cara A. Gardner*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and REID, *Senior Judge*.

REID, *Senior Judge*: Appellant, Clinton Turner, challenges the trial court's

denial of his motion, filed pursuant to D.C. Code § 23-110 (2012 Repl.); the

motion alleged ineffective assistance of counsel during his trial for simple assault.[1]

Mr. Turner argues that the trial court erred in declining to extend to his case the Supreme Court's ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010), to require a reasonably competent criminal defense attorney to inform him of collateral employment consequences. He also contends that under *Padilla*, the trial judge incorrectly applied the prejudice prong of the ineffective assistance of counsel standard. For the reasons stated below, we affirm the trial court's judgment.

**FACTUAL SUMMARY**

In October 2013, during his tenure as a Metropolitan Police Department ("MPD") officer, Mr. Turner was convicted of simple assault after a bench trial. The government's evidence showed that his conviction stemmed from an incident at a shoe store where he and another MPD officer, Lewond Fogle, were conducting a "business check." The complainant, Daniel Fox, who was working at the store,

---

[1] Mr. Turner also filed a direct appeal of his conviction for assault, pursuant to D.C. Code § 22-404 (2012 Repl.), which was consolidated with his collateral appeal, but his appellate brief only addresses the appeal relating to the trial court's denial of his § 23-110 motion. In addition, the government makes no argument related to Mr. Turner's direct appeal and notes that Mr. Turner's "sole challenge in these consolidated appeals relates to the trial court's denial of his § 23-110 motion."

made an inappropriate comment to Officer Fogle concerning the female store manager. Officer Turner told Mr. Fox, "Don't do anything that will get you fired or arrested." The trial judge found that when Mr. Fox made yet another comment, Officer Turner "grabbed Mr. Fox, pulling him down from his table or seat, and slammed him into a wall and then to the ground and eventually arrested him." Officer Turner pulled some of Mr. Fox's hair out while pulling him down. Mr. Turner testified on his own behalf, explaining that he believed that he was justified in using reasonable force in arresting Mr. Fox, who was being disorderly. The trial court found that Mr. Turner's version of the events was "not credible and . . . not supported by any of the objective evidence," including a video that captured the encounter. The court concluded that Mr. Turner used excessive force while interacting with Mr. Fox and found him guilty of assault.[2]

---

[2] Subsequently, MPD filed administrative charges against Officer Turner due to his conviction. Initially, Officer Turner was given notice of two charges (and three specifications) against him. On July 4, 2014, a panel of MPD officers found that there was not a preponderance of evidence to support Charge 1, Specification 1 and Charge 2, Specification 1, both relating to alleged violations of a General Order. The panel found that there was a preponderance of evidence to support Charge 1, Specification 2 concerning the guilty assault verdict, but the panel did not believe there was evidence beyond a reasonable doubt that Officer Turner assaulted Mr. Fox. The first panel recommended "that [Officer Turner] be returned to full duty as quickly as possible." However, on July 23, 2014, the United States Attorney's Office advised MPD that it would no longer sponsor the testimony of Mr. Turner due to the adverse credibility findings against him by the trial judge in his criminal case. In response, MPD sent Officer Turner an amended notice of adverse action, listing three charges against him based on his assault

(continued…)

Mr. Turner lodged a *pro se* Motion to File a Belated Appeal on October 3, 2014, arguing that his trial counsel had been deficient. This court interpreted his motion as a collateral attack under D.C. Code § 23-110. Mr. Turner also eventually filed a direct appeal of his assault conviction on October 23, 2015.

At the June 3, 2016, D.C. Code § 23-110 evidentiary hearing, Mr. Turner's trial counsel, Harold Martin,[3] testified regarding his representation of Mr. Turner during the assault trial.[4] Mr. Martin explained that the defense theory at trial was

---

(…continued)

conviction, his use of excessive force, and the trial court's adverse credibility finding. A new MPD panel of officers heard the charges on October 29, 2014, found Officer Turner guilty of all of the charges, and recommended that he be terminated from employment. MPD sent Officer Turner a final notice of adverse action, removing him from the force, effective February 6, 2015.

Mr. Turner and the government indicate that Mr. Turner may be reinstated as an MPD officer based on a recent decision by the Public Employee Relations Board relating to Mr. Turner's administrative appeal of his termination. Mr. Turner indicates, however, that MPD has challenged this decision in Superior Court, and that case has not yet been resolved.

[3] Mr. Martin's law firm "has a prepaid legal services contract with the Fraternal Order of Police," and he has represented many officers in cases involving the use of force. His firm is "precluded from providing any advice or consultation regarding any administrative matters that involve the District of Columbia [because] [i]t would be viewed to be a conflict of interests since the [District] pays [the firm] to administer the legal plan." The prohibition on representation includes trial boards.

[4] Mr. Turner did not testify at the evidentiary hearing.

that Mr. Turner "used a reasonable amount of force under the circumstances in the course of making a valid arrest or detainment for legitimate police purposes." Mr. Martin understood that Mr. Turner wanted to testify, and he explained to Mr. Turner that he did not believe he could avoid conviction without testifying. Mr. Martin practiced Mr. Turner's direct examination with him, talked to him about the principles of cross-examination, and explained how Mr. Turner might be attacked on cross-examination. He also generally spoke about the importance of being truthful. Mr. Martin stated that "[t]here never seemed to be any ambiguity about [Mr. Turner's] understanding of what was the truth and what was falsehood or what was right and what was wrong."[5]

Mr. Martin "may have informally discussed" how the criminal trial could affect Mr. Turner's employment with MPD and he informed Mr. Turner that people "have survived a misdemeanor conviction." However, he did not have a detailed discussion with Mr. Turner about the potential administrative consequences of his criminal case because Mr. Martin believed such a discussion would be a conflict of interest and would involve speculating about results. Mr.

---

[5] In addition, since there was other testimony that supported Mr. Turner's side of the story, "[Mr. Martin] did not see any need to go down the road of advising him about the dangers of perjury based on the nature of the testimony that [the court] heard."

Martin did not inform Mr. Turner about any consequences he may face regarding employment and his ability to testify in future criminal cases due to an adverse credibility finding by the court. The "focus was on trying to win th[e] trial."[6]

The trial court denied Mr. Turner's § 23-110 motion on June 7, 2016. First, the court found that trial counsel's representation of Mr. Turner was not

---

[6] After Mr. Martin testified, counsel for Mr. Turner made oral argument as to why Mr. Martin's representation was constitutionally deficient. When the trial judge interpreted counsel's statements as indicating that "Mr. Martin had to advise his client not only . . . [that] he needed to testify in order to obtain an acquittal, but [also] . . . to advise him that . . . if you testify in this case and you are convicted and the [trial] [c]ourt finds you to be incredible, then you will be terminated from your employment." Mr. Turner's counsel responded, "I don't know that I'm asking the [c]ourt to draw that bright a line." She explained her argument as follows: "[T]he right to effective assistance of counsel includes th[e] right to give sound and adequate advice about the decision to testify or not testify, and that . . . requires a meaningful and thoughtful discussion of some type," including collateral consequences. Specifically, Mr. Martin should have advised Mr. Turner "that if he elected to testify[,] . . . he would automatically be terminated from his job," and Mr. Martin should have "explored or investigated" whether the complaining witness had "an extreme bias or monetary bias or [received] financial gain." The government argued that "the employment termination was not automatic, as best demonstrated by the fact that there were administrative proceedings on the employment side which resulted in a finding of termination for Mr. Turner."

The potential consequences of an adverse credibility finding include Mr. Turner's placement on what is known as the *Lewis* list, which consists of a list of police officers who have credibility issues. The creation of the list stems from *Lewis v. United States*, 408 A.2d 303, 309 (D.C. 1979).

constitutionally deficient.[7] Second, the trial judge declared, "Even if [Mr. Martin] were deficient, however, I would find that [Mr. Turner] has not demonstrated sufficient prejudice under *Strickland v. Washington*, [466 U.S. 668 (1984),] concerning Mr. Martin's purported deficient performance in giving advice." Mr. Turner appealed the denial of the § 23-110 motion, and this court consolidated his direct and collateral appeals.

---

[7] After referencing and briefly discussing *Padilla*, *supra*, the trial court declared, in part:

> I don't think the law at this point reaches to the extent that [Mr. Turner's trial counsel] had an independent obligation other than giving advice with regard to his strategy in the criminal case before the [c]ourt, as opposed to any administrative procedure that may follow. It doesn't take a rocket scientist to understand that, regardless of whether the defendant testified or did not testify, he was likely to be subject to some administrative process upon his conviction. What that was was not knowable at the time. And to go further and require counsel to assess not only what would happen as a result of a conviction, but also what would happen if he testified and was convicted, seems to be not within the realm of what competent counsel would be expected to do.

## STANDARD OF REVIEW AND LEGAL PRINCIPLES

"For purposes of appellate review, the trial court's determination of whether counsel was ineffective presents a mixed question of both law and fact. *Otts v. United States*, 952 A.2d 156, 163 (D.C. 2008). "[W]e must accept the trial court's factual findings unless they lack evidentiary support in the record, but we review the trial court's legal determinations *de novo*." *Id.* (citation omitted).[8] "Under *Strickland*, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[9] *Hinton*, *supra*, 134 S. Ct. at 1088

---

[8] "*Strickland* recognized that the Sixth Amendment's guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e' entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence." *Hinton v. Alabama*, 134 S. Ct. 1081, 1087-88 (2014) (per curiam) (citing *Strickland*, *supra*, 466 U.S. at 685-87).

[9] In *Padilla*, *supra*, the Supreme Court considered a threshold question before addressing the *Strickland* test – "Was advice about deportation 'categorically removed' from the scope of the Sixth Amendment right to counsel because it involved only a 'collateral consequence' of a conviction, rather than a component of the criminal sentence?" *Chaidez v. United States*, 568 U.S. 342, 349 (2013) (quoting *Padilla*, *supra*, 599 U.S. at 366). Generally, an attorney must inform his or her client of the direct consequences of a criminal proceeding, but not the collateral consequences. With respect to the threshold question, the *Padilla* Court concluded that "a lawyer's advice (or non-advice) about [a defendant's

(continued…)

(quoting *Padilla*, *supra*, 599 U.S. at 366). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id*. (internal quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, *supra*, 466 U.S. at 689. Under the second prong of the *Strickland* test, "[a] reasonable probability [of a different result] is a probability sufficient to undermine confidence in the outcome." *Hinton*, *supra*, 134 S. Ct. at 1089 (internal quotation marks omitted).

---

(…continued)

guilty] plea's deportation risk" is not "exempt from Sixth Amendment scrutiny." *Id*. at 352. It is not exempt because "[d]eportation . . . is unique . . ., a particularly severe penalty, and one intimately related to the criminal process" in the sense that "immigration statutes make [deportation] nearly an automatic result." *Id*. (internal quotation marks and citation omitted). The Court further asserted, "Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Padilla*, *supra*, 599 U.S. at 366.

## MR. TURNER'S MAIN ARGUMENTS

Mr. Turner recognizes that "[t]he *Padilla* Court itself did not expressly rule on the prejudice issue in that case."[10] Nevertheless, he first argues that "other courts have clarified the sort of prejudice that *Padilla* requires: the possibility that the defendant would have rationally pursued an alternate course to avoid the collateral consequences, and *not* whether the ultimate question of the defendant's guilt or innocence would have been answered differently." Second, Mr. Turner contends that the trial court erred by ruling that his trial counsel's assistance was

---

[10] Subsequent to the filing of Mr. Turner's main brief and his reply brief, the Supreme Court addressed the prejudice issue in another deportation case, *Lee v. United States*, 137 S. Ct. 1958 (2017). Mr. Lee, a noncitizen who was charged with "possessing ecstasy with intent to distribute," "feared that a criminal conviction might affect his status as a lawful permanent resident." 137 S. Ct. at 1962. After his attorney assured him that he would not be deported if he entered a guilty plea, Mr. Lee accepted the government's plea offer. *Id.* Mr. Lee "claim[ed] that he would not have accepted a plea had he known it would lead to deportation." *Id.* at 1969. The Court reiterated *Strickland*'s "high bar" and declared that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1967. Rather, "[j]udges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* The Court determined that Mr. Lee's claim was "backed by substantial and uncontroverted evidence," and the Court "conclude[d] . . . [that he] ha[d] demonstrated a 'reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 1969 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

constitutionally effective. He "asks this [c]ourt to hold . . . that reasonably competent criminal defense counsel in the District would be expected to inform a client in Mr. Turner's circumstances about the effects of an adverse credibility finding on his employment."[11]

## ANALYSIS

### *Defense Counsel's Representation at Mr. Turner's Criminal Trial*

Based upon our review of the record, our highly deferential standard, and our consideration of *Padilla*, we conclude that Mr. Turner's trial counsel's representation was not constitutionally deficient; rather it was reasonable under all

---

[11] In his reply brief, Mr. Turner responds to the government's argument that he is barred from arguing that the trial court should have applied a *Padilla* prejudice standard because he made a different argument in the trial court. Mr. Turner claims that his trial "counsel's deficient performance regarding collateral consequences was expressly argued in the trial court . . . and *Padilla* itself was discussed by the trial judge in his ruling." Hence, his "claim that he is entitled to relief under *Padilla* was argued and decided [in the trial court], and . . . not waived." We are satisfied that Mr. Turner raised a claim under *Padilla* in the trial court and that the claim has not been waived. *See Tindle v. United States*, 778 A.2d 1077, 1082 (D.C. 2001) ("[T]he Supreme Court of the United States and this court have distinguished between 'claims' and 'arguments,' holding that although 'claims' not presented in the trial court will be forfeited (and thus subject to plain error review standard), parties on appeal are not limited to the precise arguments they made in the trial court.") (internal quotation marks omitted).

of the circumstances of this case. *See Hinton*, *supra*, 134 S. Ct. at 1088; *Strickland*, *supra*, 466 U.S. at 689. The trial court found that Mr. Martin had been in practice since 1983, and many of his cases have involved the use of force by police officers. The trial court also found that Mr. Martin met with Mr. Turner "approximately 20 times over the course of two years," and after hearing the government's evidence at trial, Mr. Martin informed Officer Turner that he would not be acquitted without testifying. As the trial court noted, Mr. Martin's impression was that Mr. Turner wanted to testify, to tell his story.

Mr. Martin met with Mr. Turner, practiced his direct examination, explained how he might be attacked on cross-examination, and generally discussed the importance of being truthful but did not focus on the collateral consequences of an adverse credibility determination.[12] We cannot agree that *Padilla* dictates a finding that Mr. Martin was constitutionally deficient in his representation because he did not explicitly discuss the collateral consequences of an adverse credibility determination on Mr. Turner's employment status as an MPD officer. *Padilla* is distinguishable from Mr. Turner's case. The Court described deportation or

---

[12] The trial court also conducted an inquiry pursuant to *Boyd v. United States*, 586 A.2d 670 (D.C. 1991) to "make sure th[at] [Mr. Turner] wished to testify."

removal as "unique" because "removal" constitutes a severe "penalty," is "intimately related to the criminal process," and is "nearly an automatic result," thereby making it "most difficult to divorce the penalty from the conviction in the deportation context." *Padilla*, *supra*, 559 U.S. at 365-66 (internal quotation marks omitted).

Mr. Turner's employment consequences cannot be fairly characterized in the same way, despite the seriousness of loss of employment. Given that neither Mr. Turner's conviction, nor his adverse credibility finding, mandated termination but instead subjected him to an administrative proceeding involving an evidentiary hearing, Mr. Turner's employment consequences were not automatic.[13] Unlike *Padilla*, where the "consequences of [Mr.] Padilla's plea could easily be determined from reading the removal statute," 559 U.S. at 369, Mr. Martin would

---

[13] First, Mr. Turner argues that Mr. Martin gave him "*affirmatively bad advice*" in stating that there have been cases where individuals who are convicted of a misdemeanor remain police officers. As the government points out, however, Mr. Turner's own evidence shows that Mr. Martin did not provide demonstrably false information. The panel decision from Mr. Turner's second administrative hearing, which he submitted as evidence for his § 23-110 motion, indicates that members of MPD have "committed similar offenses [and] have been terminated, and others have been suspended without pay for like or similar misconduct."

Second, testimony from the second panel decision of Mr. Turner's administrative hearing indicates that MPD "currently has officers employed that the U.S. Attorney has problems with but they are still employed."

have had to jump through several speculative hoops during trial in advising Mr. Turner of the potential employment consequences of testifying. We agree with the trial court's reasoning, which explained that Mr. Turner's request of trial counsel would have required first predicting the consequences of a conviction where Mr. Turner had testified and where the court had issued an adverse credibility finding against him, and then understanding the nature of an administrative process that might lead to his termination. In short, we agree that Mr. Turner's trial counsel was not obligated to inform Mr. Turner of the potential employment consequences of a conviction and his decision to testify.[14]

### *The Prejudice Prong of Padilla/Strickland*

Since we conclude that Mr. Martin's representation was not constitutionally deficient, we need not address Mr. Turner's arguments regarding prejudice.[15] *See*

---

[14] Mr. Turner has not brought to the court's attention any case affirmatively extending *Padilla* to the context of informing defendants of employment consequences during trial.

[15] Although we do not address Mr. Turner's "prejudice" arguments, we note that unlike *Padilla* and *Lee*, *supra*, Mr. Turner proceeded to trial on the assault charge, and he does not suggest that the result might be different following a new trial at which he did not testify. Moreover, given this court's deference to credibility determinations in the trial court, we see no way in which Mr. Turner could erase the trial court's finding that his testimony was not credible. Nor does

(continued…)

*Strickland*, *supra*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

Accordingly, for the foregoing reasons, we affirm the judgments of the trial court.

*So ordered.*

---

(…continued)
this record – especially Mr. Turner's motion of September 2, 2014 (deemed to be a motion under D.C. Code § 23-110), and his reply to the government's opposition to his motion – contain any evidence supporting a conclusion that he would not have testified if he had received different advice about the possible employment consequences of testifying.